FILED

JAN 18 2013

CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | | |
|---|---|---|
| SISSETON-WAHPETON OYATE OF | * | CIV 11-3026 -RAL |
| THE LAKE TRAVERSE | * | |
| RESERVATION | * | |
| and ROBERT SHEPHERD, Chairman, | * | |
| | * | |
| Plaintiffs, | * | OPINION AND ORDER |
| | * | GRANTING IN PART AND |
| vs. | * | DENYING IN PART MOTION |
| | * | FOR PARTIAL DISMISSAL |
| UNITED STATES CORPS OF | * | |
| ENGINEERS; STEVEN E. NAYLOR, | * | |
| in his official capacity as Regulatory | * | |
| Program Manager; | * | |
| and ROBERT J. RUCH, in his official | * | |
| capacity as District Commander, | * | |
| | * | |
| Defendants. | * | |

Sisseton-Wahpeton Oyate of the Lake Traverse Reservation ("the Tribe") and Robert

Shepherd, the Tribe's chairman, filed a Complaint for declaratory, injunctive, and other relief.

Doc. 1. Plaintiffs named as Defendants United States Corps of Engineers ("the Corps"), Robert

J. Ruch ("Ruch"), in his official capacity as district commander, and Steven E. Naylor

("Naylor"), in his official capacity as regulatory program manager.

Defendants filed a Partial Answer, Doc. 10, and Motion to Dismiss for Lack of

Jurisdiction, Doc. 11. Plaintiffs filed an Amended Complaint, Doc. 16, a Memorandum in

Opposition to Defendants' Motion to Dismiss, Doc. 18, and a Supplement, Doc. 21; Doc. 22.

Defendants then filed a Motion to Dismiss (Partial) Plaintiff's Amended Complaint and withdrew

the original Motion to Dismiss, Doc. 26. Plaintiffs resisted that motion through a Response,

Doc. 29, and Defendants also filed a Reply to that Response, Doc. 30. Plaintiffs and Defendants

submitted several affidavits and declarations providing information outside of the Complaint. Doc. 18; Doc. 19; Doc. 21; Doc. 22; Doc. 27; Doc. 29; Doc. 30.

**I. Facts**

This lawsuit centers on the Tribe's concern about development at Enemy Swim Lake within the Lake Traverse Reservation in South Dakota. Doc. 16 at ¶ 1. The Tribe considers Enemy Swim Lake to be of tremendous cultural and religious significance. Doc. 16 at ¶ 2. The 1867 Treaty between the United States and the Tribe dealt in part with Enemy Swim Lake. Doc. 16 at ¶ 2. There are burial grounds at and near the lake, plants from the lake are used in ceremonies for medicinal purposes, some tribal members catch fish for sustenance from the lake, and some tribal members consider Enemy Swim Lake to be a sacred place. Doc. 16 at ¶ 2.

Merlyn Drake ("Drake"), who is not a member of the Tribe, owns land adjoining Enemy Swim Lake. Doc. 16 at ¶ 7. Drake acquired the land from Leo K. Fleischacker, who was a farmer and utilized a now-submerged gravel road to cross an inlet to Enemy Swim Lake. Doc. 16 at ¶¶ 25-26. Drake has received certain exemptions and permits from the Corps for a farm road and bridge to access a pasture, but according to the Plaintiffs is not a farmer. Doc 29 at 7 n.35. Drake's exemptions and permits from the Corps include authorization for excavation and extraction activities for the production of a road and bridge. Doc. 16 at ¶ 11. Drake worked for several years on a road, approximately one mile in length, through an inlet to and crossing near the shoreline of Enemy Swim Lake. Doc. 16 at ¶ 14. The Plaintiffs have not sued Drake directly because of a concern that Drake would have a successful "permit shield" defense because his "compliance with an authorized permit is deemed compliance with the CWA [Clean Water Act]." Doc. 18 at 5 n.23.

2

The first exemption determination at issue came on August 18, 1998, when the Corps sent a letter to Drake advising that Drake's proposal to construct "a road across a drainage into Enemy Swim Lake consisting of installing a 70-foot span bridge with approach berms and abutments for access by livestock and equipment" was exempt from the requirement to have a § 404 permit under the Clean Water Act. Doc. 27-1. The Plaintiffs allege that Drake never completed the project at issue in the August 18, 1998 letter. Doc. 29 at 9. On June 6, 2000, the Corps issued a letter to Drake determining Drake was entitled to authorized site grading and construction of an access road with associated 0.30 acre wetland fill for residential lot development, and construction of a culverted agricultural road crossing at a second location along Enemy Swim Lake. Doc. 18-9 at 4; Doc. 27-2.

In 2003, Drake filed an Application to raise the access road surface above the water surface in order to access his property on the north side without trespassing through the Tribe's land. Doc. 16 at ¶¶ 19-20. Drake previously had declined the Tribe's offer of an easement for Drake to access his north side lakeshore property. Doc. 16 at ¶ 22. On December 2, 2003, the Corps informed Drake that his proposed project—"a culverted farm road approximately four feet high with a twenty feet wide top and 2:1 sideslopes across a wetland adjacent to Enemy Swim Law to provide access for livestock and equipment"—was exempt from § 404 of the Clean Water Act as a farm road under 33 U.S.C. § 1344(f) and 33 C.F.R. § 323.4. Doc. 27-3; Doc. 16 at ¶ 23. The Corps' decision was conditioned upon, among other things: (1) the design of the road not changing; (2) a change in the project; (3) complying with the Road Exemption Conditions or Best Management Practice; (4) complying with the Corps regulations; and (5) complying with the Clean Water Act. Doc. 16 at ¶ 23; Doc. 27-3 at 3-4. In 2009, Drake informed the Corps and

3

Tribal officials that the road has not been completed. Doc. 16 at ¶ 29. Drake is still working on the road. Doc. 16 at ¶ 30. Despite a prior suggestion that he would do so, Drake has not fenced off either Enemy Swim Lake from his property or his new road to ensure that the cattle use the new road when crossing the inlet of Enemy Swim Lake. Doc. 16 at ¶¶ 20, 31. On December 4, 2003, the Corps determined that a Nationwide Permit allowed a north-south road crossing connecting Drake's driveway to another residence, understood by the Corps to be "a culverted road across a wetland approximately 375 feet long with an eighteen feet wide top to provide public access to local residences." Doc. 18-9 at 4; Doc. 27-4. The Corps provided no public notice or separate notice to the Tribe of the 1998 or 2003 regulatory decisions concerning Drake's requests.

On January 25, 2005, because of the Tribe's and others' misgivings about Drake's intended property use, the office of United States Senator Tim Johnson coordinated a meeting concerning Drake's development projects at the Day County Courthouse in Webster, South Dakota. Doc. 18-46 at ¶ 5; Doc. 27-6 at 4. This meeting was attended by, among others, Drake, Alvah Quinn, a member of the Tribe and its Fish and Wildlife Director, Doc. 18-46 at ¶¶ 1-3, Floyd DeCoteau, a member of the Tribe and a lease clerk for Tribal Realty, Doc. 18-47 at ¶¶ 2-3, David LaGrone, a Civil Engineer for the Corps, Doc. 27-6, and Drew C. Johnson, a private attorney representing various individual landowners, Doc. 27-6 at 25. The parties have varying characterizations of the meeting although the meeting's focus was on Drake's activities at and near Enemy Swim Lake.

In 2006, the Corps determined that Drake's proposed bridge across the primary inlet tributary of Enemy Swim Lake for access to agricultural land northwest of the inlet was similarly

4

exempt from § 404 of the Clean Water Act as a farm road. Doc. 16 at ¶ 33; Doc 18-9 at 2. That bridge was incomplete at the time of the filing of the present lawsuit and although Drake had recently placed decking on the bridge, it had yet to be used. Doc. 16 at ¶¶ 34-36. The bridge is made of steel I-beams and is wide enough for a two-lane road. Doc. 16 at ¶¶ 37-38. Finally, on May 4, 2009, the Corps determined that a Nationwide Permit allowed Drake to place two road crossings with culverts located on the north side of the inlet. Doc. 18-9.

In 2009, the Tribe made a Freedom of Information Act request regarding the Corps' dealings with Drake and received responsive documents. In 2009 and 2010, the Tribe and the Corps exchanged several letters. On June 15, 2009, the Tribe asked the Corps to withdraw the exemption decisions and permits granted to Drake. Doc. 18-2 at 1. On July 7, 2009, the Corps provided an interim response to the Tribe. Doc. 18-5. The Tribe sent an additional letter on May 2, 2010. Doc. 18-8. The Corps then responded with a August 30, 2010, which opened by thanking the Tribe "for this further opportunity to explain the decisions we [the Corps] have made and the actions we have taken over the course of our twelve-year involvement in the matter." Doc. 18-9.

## II. Standard of Review

Defendants move to dismiss some of Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(1) for a lack of subject matter jurisdiction.   See, e.g., Runs After v. United States, 2012 WL 2951556, No. 10-3019-RAL, at *3 (D.S.D. July 19, 2012). A court is to conduct a different review based on whether a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) is a facial or a factual attack.

> A court deciding a motion under Rule 12(b)(1) must distinguish between
> a "facial attack" and a "factual attack." In the first instance, the court

> restricts itself to the face of the pleadings and the non-moving party
> receives the same protections as it would defending against a motion
> brought under Rule 12(b)(6). The general rule is that a complaint should
> not be dismissed unless it appears beyond doubt that the plaintiff can
> prove no set of facts in support of his claim which would entitle him to
> relief. In a factual attack, the court considers matters outside the
> pleadings and the non-moving party does not have the benefit of 12(b)(6)
> safeguards.

Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (internal citations and quotation

marks omitted).

All parties to this lawsuit agree that as to the question of the statute of limitations, the

Defendants' motion to dismiss is factual in nature. Doc. 29 at 7. Therefore, this Court may

"consider[] matters outside the pleadings," and the Plaintiffs do not benefit from the standard

Rule 12(b)(6) safeguards. Osborn, 918 F.2d at 729 n.6.

> Here the trial court may proceed as it never could under 12(b)(6)
> or Fed.R.Civ.P. 56. Because at issue in a factual 12(b)(1) motion
> is the trial court's jurisdiction-its very power to hear the case-there
> is substantial authority that the trial court is free to weigh the
> evidence and satisfy itself as to the existence of its power to hear
> the case. In short, no presumptive truthfulness attaches to the
> plaintiff's allegations, and the existence of disputed material facts
> will not preclude the trial court from evaluating for itself the
> merits of jurisdictional claims. Moreover, the plaintiff will have
> the burden of proof that jurisdiction does in fact exist.

Osborn, 918 F.2d at 730 (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891

(3rd Cir. 1977)).

Rule 12 requires this Court to apply the Rule 56 standards for motions for summary

judgment to such a factual challenge. Fed. R. Civ. P. 12(b), (c); Osborn, 918 F.2d at 729. Under

Rule 56, courts view "the evidence and the inferences that may be reasonably drawn from the

evidence in the light most favorable to the nonmoving party." E.E.O.C. v. CRST Van Expedited,

6

Inc., 679 F.3d 657, 686 (8th Cir. 2012) (quoting Mayer v. Countrywide Home Loans, 647 F.3d

789, 791 (8th Cir. 2011)). A party opposing a properly made and supported motion under Rule

56 must cite to particular materials in the record supporting the assertion that a material fact is

genuinely disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d

1142, 1145 (8th Cir. 2012). "Jurisdictional issues, whether they involve questions of law or of

fact, are for the court to decide." Osborn, 918 F.2d at 729.

The Corps also asks for dismissal to the extent that the Plaintiffs challenge the Corps'

exercise of enforcement discretion. This is a facial attack under 12(b)(1) and thus "the court

restricts itself to the face of the pleadings and the non-moving party receives the same protections

as it would defending against a motion brought under Rule 12(b)(6)." Osborn, 918 F.2d at 729

n.6 (internal citation omitted). This Court may grant a motion to dismiss under Rule 12(b)(6)

when "the plaintiff can prove no set of facts that would entitle him to relief." Botten v. Shorma,

440 F.3d 979, 980 (8th Cir. 2006); Muller v. Gateway Bldg. Sys., Inc., 743 F. Supp. 2d 1096,

1098 (D.S.D. 2010).

## III. Discussion

Defendants' motion for partial dismissal seeks to dismiss Counts 1, 2, 3, 4, 5, and 6 as

well as Plaintiffs' challenges to regulatory actions occurring more than six years prior to the filing

of the Complaint or Amended Complaint and the Corps' August 30, 2010 letter. Doc. 26 at 3.

Defendants make three arguments for partial dismissal of the Amended Complaint: (1) the

Plaintiffs' challenge of the Corps' regulatory action is beyond the six-year statute of limitations;

(2) the August 30, 2010 letter is not, as the Plaintiffs contend, the final agency action for

7

purposes of judicial review; and (3) a challenge to the Corps' exercise of enforcement discretion is non-justiciable.  Doc. 27 at 3-4.

### A. Statute of Limitations

Defendants argue that Counts 1, 2, 3, 4, 5, and 6 violate the statute of limitations and are therefore subject to dismissal under Federal Rule of Civil Procedure 12(b)(1).  On a motion to dismiss for lack of jurisdiction, it is appropriate to consider matters outside the pleadings to determine the relevant jurisdictional facts.  See Stevens v. Redwing, 146 F.3d 538, 546 (8th Cir. 1998).  Because the statute of limitations is a jurisdictional limit, "the plaintiff will have the burden of proof that jurisdiction does in fact exist."  Osborn, 918 F.2d at 730; Runs After, 2012 WL 2951556 at *6 ("When, as in the present case, a defendant challenges subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdictional facts.") (citing V S Ltd. P'ship v. Dep't Hous. and Urban Dev., 235 F.3d 1109, 1112 (8th Cir. 2000)).

Suits against the United States "shall be barred unless the complaint is filed within six years after the right of action first accrues."  28 U.S.C. § 2401(a).  The United States has waived sovereign immunity on behalf of agencies.  See 5 U.S.C. § 702.  "A person suffering legal wrong because of agency action; or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 701.  This waiver of sovereign immunity is not absolute; the waiver applies unless "(1) statutes preclude judicial review, or (2) agency action is committed to agency discretion by law."  5 U.S.C. § 702.  Section 702 "allows the judiciary, *assuming all other jurisdictional requirements are met*, to halt illegal government conduct."  Erwin Chemerinsky, Federal Jurisdiction 634 (5th ed. 2007) (emphasis

8

added).   The waiver of sovereign immunity under § 702 therefore is subject to the six-year statute of limitations. Izaak Walton League of America, Inc. v. Kimbell, 558 F.3d 751, 758-59 (8th Cir. 2009).

The waiver of sovereign immunity exists for six years after "the right of action first accrues." 28 U.S.C. § 2401(a). A claim against a governmental agency first accrues "on the date when all the events have occurred which fix the liability of the Government and entitle the claimant to institute an action." Izaak Walton, 558 F.3d 751, 759 (quoting and citing Chandler v. United States. Air Force, 255 F.3d 919, 921 (8th Cir. 2001)); see also Victor Foods, Inc. v. Crossroads Econ. Dev. of St. Charles County, Inc., 977 F.2d 1224, 1226 (8th Cir. 1992) (per curiam) ("A cause of action accrues when there are facts enabling one party to maintain an action against another."). "For purposes of § 2401(a)[,] a claim accrues 'when the plaintiff either knew, or in the exercise of reasonable diligence should have known, that [he or she] had a claim.'" Andersen v. United States Dep't of Hous. and Urban Dev., 678 F.3d 626, 629 (8th Cir. 2012) (quoting Izaak Walton, 558 F.3d at 759); Loudner v. United States, 108 F.3d 896, 900 (8th Cir. 1997).

The Plaintiffs assert that their claims about the Corps' actions regarding Drake's activities did not accrue for purposes of the statute of limitations until the Corps' August 20, 2010 letter. The Corps contends that the claims accrued at least by January 25, 2005, with respect to the Corps' exemption determinations of August 18, 1998, and December 2, 2003, and the Corps' Nationwide Permit verifications on June 6, 2000 and December 4, 2003.

The Corps made its first exemption determination on August 18, 1998, when it sent a letter to Drake stating that Drake's proposal to construct a road was exempt from the requirement

to have a Clean Water Act § 404 permit. Doc. 27-8. The letter was not preliminary in nature, but stated the Corps' regulatory decision. However, the letter to Drake was not published and there is no evidence of any public notice at the time of the August 18, 1998 exemption or that the Plaintiffs knew or should have known of this letter at the time. Thus, the statute of limitations on the Plaintiffs' claim did not begin to run on August 18, 1998. The same is true for the June 6, 2000 verification letter stating that certain site grading and a culverted agricultural road were exempt from the permit requirements.

The Corps sent two letters to Drake in December of 2003--a December 2, 2003 letter determining a farm road project exempt from requiring a permit, Doc. 27-3, and a December 4, 2003 letter determining that a Nationwide Permit allowing construction of a culverted road for public access to local residences. Doc. 27-4. Again, although both letters were decisions not preliminary in nature, neither the December 2, 2003 letter nor the December 4, 2003 letter was a matter of public knowledge, and there is no evidence that the Plaintiffs knew or should have known of the agency action at the time the Corps determined the exemption and Nationwide Permit to apply in December of 2003.

However, the record reveals that the Plaintiffs knew something about the Corps' dealings with Drake more than six years prior to the filing of the suit. Alvah Quinn is a tribal member and works for the Tribe. Doc 18-46 at ¶¶ 2-4. On November 8, 2004, Quinn called the Corps on behalf of the Tribe. Quinn spoke with M. James Oerhlerking, a civil engineer employed by the Corps and stationed in Pierre, South Dakota, on November 9, 2004. Doc. 27-7. Oerhlerking took notes during and about the November 9, 2004 telephone conversation with Quinn. See Doc. 27-7 at 5. These notes indicate that Oerhlerking informed Quinn about the § 404 exemption

10

issued to Drake on December 2, 2003, and that Quinn was calling on behalf of the Tribe due to its concern and objections to the bridge crossing. Doc. 27-7 at 5; Doc. 30-1 at ¶ 5. Oerhlerking does not remember a discussion about any other exemptions or permits at that time. Doc. 30-1 at ¶ 5. Quinn disagrees with Oerhlerking's notes, does not recall discussing any exemptions or permits at issue in this case, recalls discussing different Nationwide Permits concerning Drake's driveway, and believes that the only bridge discussed was a different one at the mouth of a creek or the east side of Enemy Swim Lake. Doc. 29-1 at ¶¶ 9-10. Oerhlerking's notes reflects that Quinn believed that Drake was intending to use improved access to his property to develop lots along the lake. Doc. 27-7 at 5. This conversation reflects some awareness by the Tribe of some Corps' conduct regarding Drake's actions. See Loudner, 108 F.3d at 900.

After the phone discussion with Oerhlerking, Quinn and others attended the January 25, 2005 meeting organized by Senator Tim Johnson's office to address issues with Drake's projects. The Corps points to this meeting as providing Plaintiffs notice because "representatives of the Tribe attended a public meeting coordinated by Senator Tim Johnson's office that focused partly on the regulatory authorizations the Corps had then issued to Drake." Doc. 17 at 19. The individuals attending this meeting included tribal representatives Alvah Quinn and Floyd DeCoteau, the Corps' David LaGrone, and attorney Drew C. Johnson on behalf of other landowners concerned with Drake's conduct.

There are written documents that help reconstruct what was discussed at the January 25, 2005 meeting. In a January 28, 2005 letter to the Corps, Drew C. Johnson, a private attorney who attended the meeting on behalf of certain landowners, described the meeting's purpose as "to take public comments about concerns raised by various land owners . . . dealing with a

11

number of issues but primarily two that were dealt with at length: (1) Lake Access and (2) Drake's permits to build various roadways through wetlands." Doc. 27-6 at 24. However, in an affidavit filed in this case, attorney Johnson stated that the January of 2005 meeting left him with the understanding that the Corps' decision making at that point "was preliminary in nature and that they were in the process of reviewing Mr. Drake's activities, as well as complaints received from the public." Doc. 29-2 at ¶ 11. In an April 16, 2005 letter to Senator Johnson reporting on the meeting, the Corps described that the "primary concerns discussed at the meeting were the purpose and need of the roads through the wetlands and the Corps permits associated with the roads. Four separate permit applications were submitted to the Corps for roads in the area from 1998 to 2003." Doc. 27-6 at 5. The Watertown Public Opinion ran a story about the meeting on January 26, 2005. Doc. 12 at 35-37. The article reports that both the Corps and the Tribe were present at the meeting, and the "the primary dispute" at the meeting "centered on permits issued by [the Corps] for Merlin Drake to build road access to his property." Doc. 12 at 35. Specifically, the "dispute centered around permits for two drives through the area wetlands and a third proposed private roadway that is exempt from the [C]orps' permitting process." Doc. 12 at 35.

Quinn and DeCoteau, the two representatives of the Tribe attending the meeting, recall discussion that "Mr. Drake was seeking a crossing for his cattle" and discussions centered on Drake's use of a preexisting road and not "a road or farm road through Enemy Swim Lake" during the meeting of January 25, 2005. Doc. 18-47 at ¶¶ 6, 10, 13. However, Quinn, in earlier conversation with Oerhlerking, had "questioned Mr. Drake's intentions and that [he] already

view[ed] Drake as a developer."[1] Doc. 29-1 at ¶ 13. The January 25, 2005 meeting involved the concerns of the Tribe and others about Drake's interactions with the Corps and his intentions to develop his land at Enemy Swim Lake.

Accrual for the purpose of § 2401(a) occurs when a plaintiff either "knew, or in the exercise of reasonable diligence should have known, that they had a claim." Loudner, 108 F.3d at 900; see also Izaak Walton, 558 F.3d at 759 (8th Cir. 2009). The evidence of what occurred at the January of 2005 meeting is in dispute, but the Tribe appears to have received information about the Corps' permits and exemptions to Drake sufficient to start the running of the statute of limitations from the January 25, 2005 meeting as to those permits and exemptions discussed at the meeting as being finally determined. This Court cannot determine exactly which permits and exemptions were discussed in such a manner, without hearing evidence and evaluating the memory and credibility of witnesses. The Plaintiffs filed their Complaint on November 7, 2011, Doc. 1, after the running of the six year statute of limitations for those permits and exemptions discussed on January 25, 2005, as having been granted, authorized, or determined.

The Plaintiffs also claim that the Corps' regulation (or lack of regulation) of Drake is a continuing violation, and thus that all of their claims are preserved from being time barred. As the Eighth Circuit has stated:

> Under the so-called continuing-violation theory, each overt act that is part of the violation and that injures the plaintiff starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times. [A]cts that are merely unabated inertial consequences (of a single act) do not restart the statute of limitations.

---

[1]Indeed, the Plaintiffs acknowledge that "[a]s early as 1998 Drake publicly represented that he w[ould] develop his land on the north side of the lake inlet/wetland." Doc. 16 at ¶ 65.

> Thus, to apply the continuing violation theory, new overt acts must be
> more than the unabated inertial consequences of the initial violation.

Izaak Walton, 558 F.3d at 759 (internal citations and quotation marks omitted). The Plaintiffs
are correct that there were multiple acts by Drake regarding site grading, roads, and bridges on
Drake's property, but each act of the Corps was not "part of the violation," within the meaning
of the continuing violation theory. Id. at 759. Each of Drake's applications was dealt with
separately by the Corps, and each exemption or permit was complete at the time of issuance.
Under the continuing violation theory, it is the conduct of the Corps—not the conduct of a non-
litigant—that determines if there are overt acts part of the violation creating ongoing injury to
the Plaintiffs.

The Corps has taken actions within the six year statute of limitations from the filing of
the Complaint, namely the May 1, 2006 exemption for a proposed bridge across the primary inlet
tributary for access to agricultural land northwest of the inlet and the May 4, 2009 permit for the
purpose of placing two road crossings with culverts. Doc. 18-9 at 1-2, 4. Those two events are
not time barred under the statute of limitations, but do not establish a "continuing violation."

**B. August 30, 2010 Letter**

Defendants seek dismissal of the Plaintiffs' claims characterizing the Corps' August 30,
2010 letter as a final agency action from which the limitations period would run. Doc. 27 at 2.
In its Amended Complaint, the Plaintiffs characterize the Corps' § 404 exemption determinations
of August 18, 1998 and December 2, 2003, and the Corps' Nationwide Permits determination of
June 6, 2000 and December 4, 2003, as "preliminary decisions" and allege that there was no final
decision on any of those matters until the August 30, 2010 letter. Doc. 16 at 32 ¶ 1.

14

Under the Administrative Procedure Act ("APA"), "[a] preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." 5 U.S.C. § 704. "[A] cause of action seeking judicial review under the APA accrues at the time of final agency action." Preminger v. Sec'y of Veterans Affairs, 517 F.3d 1299, 1307 (Fed. Cir. 2008); see also Sierra Club v. Slater, 120 F.3d 623, 631 (6th Cir. 1997) ("Under the APA, a right of action accrues at the time of 'final agency action.'"). The Supreme Court of the United States has stated:

> To determine when an agency action is final, we have looked to, among other things, whether its impact "is sufficiently direct and immediate" and has a "direct effect on . . . day-to-day business." An agency action is not final if it is only "the ruling of a subordinate official," or "tentative." The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties.

Franklin v. Massachusetts, 505 U.S. 788, 796-97 (1992) (internal citations omitted); see also Iowa Utils. Bd. v. F.C.C., 120 F.3d 753, 803 (8th Cir. 1997), and Nebraska ex re. Nelson v. Cent. Interstate Low-Level Radioactive Waste Comm'n, 26 F.3d 77, 80 (8th Cir. 1994). An agency action is final "whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority." 5 U.S.C. § 704.

On June 15, 2009, the Tribe first asked the Corps to withdraw the § 404 exemption decisions and the Nationwide Permit determinations regarding Drake's projects. Doc. 18-2 at 1. On July 7, 2009, the Corps provided an interim response to the Tribe. Doc. 18-5. This letter communicated that exemptions and permits already had been issued to Drake, but that the Corps

15

would continue to monitor Drake's activities and planned a site visit within a month to review

the current site conditions and determine if any violations or noncompliance conditions existed.

Doc. 18-5 at 1. The Tribe sent an additional letter on May 2, 2010. Doc. 18-8. The Corps then

responded with the August 30, 2010 letter at issue. Doc. 18-9. The August 30, 2010 letter began

by thanking the Tribe "for this further opportunity to explain the decision we [the Corps] have

made and the actions we have taken over the course of our twelve-year involvement in the

matter." Doc. 18-9. The letter made clear that the prior Corps determinations were firm and

"that any modifications to the road to serve a non-exempt purpose, such as a residence or other

development, will be subject to permit requirements." Doc. 18-9 at 2. The letter also stated that

the Corps had continued, and would continue, "to conduct compliance inspects and [would]

continue to require adherence to those conditions." Doc. 18-9 at 4.

 The permits and exemptions predating 2005 granted by the Corps to Drake constituted

final agency action at the time of issuance. "The core question is whether the agency has

completed its decision[-]making process, and whether the result of that process is one that will

directly affect the parties. " Franklin, 505 U.S. at 796-97. Here, the Corps had completed the

decision-making process on permits and exemptions predating 2005 at the time that it made

those permits and exemptions determinations. See Nat'l Ass'n of Home Builders v. U.S. Army

Corps of Eng'rs, 417 F.3d 1272, 1278-79 (D.C. Cir. 2005) (finding issuing of Nationwide

Permits to constitute final agency action). The Corps gave Drake full permission to move

forward with the projects subject to the permits and exemptions. There was no higher level of

review within the agency and the legal rights of each side were clear at the time of issuance.

Although the Corps would continue to monitor Drake to ensure compliance and would continue

16

to issue additional permits and exemptions if there were any changes in Drake's project, each individual permit and exemption was final at the time of issuance.    This comports with how other courts have understood actions by the Corps.  In <u>Arkansas Nature Alliance, Inc. v. U.S. Army Corps of Eng'rs</u>, the United States District Court for the Eastern District of Arkansas found that a Nationwide Permit determination, which allowed the placement of fill materials, was a final agency action.  266 F. Supp. 2d 876, 881 (E.D. Ark. 2003).  Similarly, the Eighth Circuit explained that when the *grant* of a permit by the Corps does "conclusively determine the disputed issue," it is thus a final action.  <u>Ripplin Shoals Land Co., LLC v. U.S. Army Corps of Eng'rs,</u> 440 F.3d 1038, 1045 (8th Cir. 2006).

The Plaintiffs argue that under <u>Friends of the Norbeck v. United States Forest Serv.</u>, the Plaintiffs would have been unable to bring suit against the Corps of Engineers before receiving the August 30, 2010 letter because the Plaintiffs would not have exhausted their administrative remedies until that letter was issued.  661 F.3d 969, 974 (8th Cir. 2011).  However, <u>Friends of Norbeck</u> concerns the general requirement that plaintiffs exhaust administrative remedies and does not concern whether the Corps actions at issue were final agency actions.  <u>Id.</u>  The Plaintiffs had six years following their awareness of the permits and exemptions to satisfy any required exhaustion of administrative remedies under <u>Friends of the Norbeck</u>.  That case does not suggest that the Corps' decisions somehow are not final determinations until the Plaintiffs decide to file an administrative claims.

Finally, the Plaintiffs argue that the statute of limitations should be equitably tolled and cite to <u>Cada v. Baxter Healthcare Corp.</u>, 920 F.2d 446 (7th Cir. 1990), to support this argument. However, <u>Cada</u> and other cases make clear that neither equitable estoppel or equitable tolling

apply to statutes of limitations that are jurisdictional in nature. Id. at 451; Earl v. Fabian, 556 F.3d 717, 723 (8th Cir. 2009) ("The doctrine of equitable tolling may apply [where] . . . there limitations period . . . is *not* a jurisdictional bar.") (emphasis added) (quoting Gassler v. Bruton, 255 F.3d 492, 495 (8th Cir. 2001)); cf., John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133-34 (2008) (rejecting equitable estoppel in similar statute of limitations of a jurisdictional nature).

### C. Bar Against Reviewing an Agency's Exercise of Enforcement Discretion

Defendants also move to dismiss the Complaint to the extent that the Plaintiffs challenge any exercise by the Corps of their enforcement discretion because such challenges are non-justiciable. Doc. 27 at 2-3. The Corps contends that dismissal at least in part of Counts 1, 2, 3, 4, 5, and 6 is appropriate for this reason. Doc. 27 at 24.

The APA allows judicial intervention, but not when "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The Supreme Court addressed the interpretation of § 701(a)(2) in Heckler v. Chaney, 470 U.S. 821 (1985). In Heckler, death row inmates challenged the refusal of the Federal Drug Administration ("FDA") to further investigate and regulate drugs to be used by states for lethal injection. Id. at 824-25. The Supreme Court held that the FDA's decision was not reviewable, interpreting § 701(a)(2) to mean "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." Id. at 837-38.

In situations where an agency refuses to take enforcement steps, the presumption is that judicial review is not available. Heckler, 470 U.S. at 831. "[The Supreme] Court has recognized on several occasions over many years that an agency's decision not to prosecute or enforce,

18

whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." Id. The recognition of agency discretion in the area of non-enforcement is "attributable in no small part to the general unsuitability for judicial review of agency decisions to refuse enforcement." Id. The Supreme Court provided several rationales for finding non-enforcement decisions unsuitable for judicial review: a decision not to enforce involves balancing of factors within the agency's expertise; an agency cannot act against each technical violation it is charged with enforcing; courts generally will defer to an agency in interpreting and implementing a statute; a failure to act does not infringe upon an individual's liberty or property rights; and such a decision is similar to a decision by the Executive Branch to not prosecute, which has long been held as the special province of only the Executive Branch. Id. at 831-32. The presumption of non-reviewability can be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement laws. Id. at 832-33. There also may be more room for judicial review if there is a constitutional violation of the rights of plaintiffs. Id. at 838. Thus, if Congress required the Corps to review or amend its decisions with regard to individuals like Drake, this Court could review the decision by the Corps to not do so. See id. at 833-35. However, as the Eighth Circuit has stated:

> [t]he statutory exception to judicial review in the APA is very narrow and is applicable in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply. Determining whether an action is committed to agency discretion requires careful examination of the statute on which the claim of agency illegality is based. The conclusion that agency action is not susceptible to review is supported by the absence of any statutory factors to guide the agency's decision-making process, in combination with the open-ended nature of the inquiry.

Friends of the Norbeck, 661 F.3d at 975 (internal quotation marks and citations omitted).

The Plaintiffs make claims under various federal laws. Counts 1 through 6, the counts that the Corps seeks to dismiss as unreviewable, claim violations of the APA, the Clean Water Act, and Corps regulations. Doc. 16 at ¶¶ 187, 190, 201, 209, 213, 218. The Corps argues that the laws governing the exemptions and Nationwide Permits determination on Drake's projects do not have statutory factors by which to measure the Corps' management decisions. Doc. 17 at 26. The two governing laws are § 404 of the Clean Water Act and the law governing Nationwide Permits.

The Eighth Circuit has declared that "a decision not to modify, suspend or revoke a Section 404 permit is one committed to the Corps' absolute discretion and, as such, it is not reviewable under the Administrative Procedures Act, 5 U.S.C. § 701(a)(1), (2)." <u>Missouri Coal. for the Env't v. Corps of Eng'rs</u>, 866 F.2d 1025, 1032 n.10 (8th Cir. 1989), <u>abrogated on other grounds</u>, <u>Goos v. I.C.C.</u>, 911 F.2d 1283 (8th Cir. 1990). In reaching this decision, the Eighth Circuit found that "neither the Corps' regulations nor the Clean Water Act mandate issuance of a permit or the reevaluation of [the] same." <u>Id.</u> The § 404 permit program provides generally that a permit is required for the discharge of dredge or fill material into waters of the United States. Some otherwise regulated discharges, however, are not subject to the Corps' jurisdiction under § 404 by virtue of exemptions created by statute and by Corps regulations. It is the exemptions to § 404 determinations issued on August 18, 1998, December 2, 2003, and May 1, 2006, that are at issue. The Corps did not in fact "modify, suspend or revoke" a § 404 permit here, but rather initially found an exemption to § 404 that allowed Drake to pursue certain projects. Without more, this Court cannot determine that "all agency action in [relation to § 404] would be acceptable." <u>See</u> <u>Friends of the Norbeck</u>, 661 F.3d at 975. In fact, challenges to Corps

actions have reached as high as the Supreme Court, indicating that not all agency action would be acceptable. See, e.g., Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs, 531 U.S. 159 (2001). Thus, the Corps finding an exemption does not fit the "very narrow" rule disallowing judicial oversight of agency decisions, particularly because the grounds for exemption were Congressionally created. Friends of the Norbeck , 661 F.3d at 975.

The Corps also maintains that the issuance of Nationwide Permits is a part of agency discretion and is not subject to judicial review. The Corps, however, is unable to provide any precedent that treats determinations of Nationwide Permits as exclusive agency domain. There are instances of court cases involving review of Nationwide Permit determinations. See, e.g., Ripplin Shoals Land Co., 440 F.3d at 1040; Nat'l Ass'n of Home Builders, 417 F.3d at 1278-79; Shelton v. Marsh, 902 F.2d 1201, 1204 (6th Cir. 1990). Thus, it appears that the granting of Nationwide Permits similarly does not fit the "very narrow" rule disallowing judicial oversight of agency decisions. Friends of the Norbeck , 661 F.3d at 975.

The Corps thus has failed to show that it has absolute agency discretion over finding § 404 exemptions and granting Nationwide Permits. To the extent that the exemptions and Nationwide Permit determinations are not time barred, this Court may review those final determinations. However, the Corps' decision "not to modify, suspend or revoke" those determinations subsequently appears to be committed to the Corps' absolute discretion. Missouri Coal. for the Env't, 866 F.2d at 1032 n.10.

## IV. Conclusion

Accordingly, it is hereby

ORDERED that Defendants' Motion for Partial Dismissal of Plaintiffs' Amended Complaint, Doc. 26, is granted as to any and all Counts and claims challenging Corps' exemptions and Nationwide Permit determinations that were discussed during the January 25, 2005 meeting as having been granted, authorized, or determined. It is further

ORDERED that Defendants' Motion for Partial Dismissal of Plaintiffs' Amended Complaint, Doc. 26, is granted as to all claims the viability of which hinges on considering the August 30, 2010 letter to be a final agency action. It is further

ORDERED that Defendants' Motion for Partial Dismissal of Plaintiffs' Amended Complaint, Doc 26, is denied to the extent that it seeks dismissal of the Corps' exemptions and Nationwide Permit determinations as non-justiciable, but granted to the extent that the Corps' decisions not to modify, suspend, or revoke those determinations are non-justiciable. It is further

ORDERED that the parties cooperate with the Court in scheduling either a separate evidentiary hearing to determine what exemptions and Nationwide Permit determinations were in fact discussed at the January 25, 2005 meeting as having been granted, authorized, or determined, or a single trial on all remaining claims at which evidence regarding the January 25, 2005 meeting could be presented with all other evidence.

Dated January 18, 2013.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE

22