UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| SISSETON-WAHPETON OYATE OF THE LAKE TRAVERSE RESERVATION; and ROBERT SHEPHERD, CHAIRMAN, <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES CORPS OF ENGINEERS; ROBERT J. RUCH, IN HIS OFFICIAL CAPACITY AS DISTRICT COMMANDER; and STEVEN E. NAYLOR, IN HIS OFFICIAL CAPACITY AS REGULATORY PROGRAM MANAGER, <br><br> Defendants. | 3:11-CV-03026-RAL <br><br><br> OPINION AND ORDER ON PENDING MOTIONS |

Sisseton-Wahpeton Oyate of the Lake Traverse Reservation and Robert Shepherd, the Tribe's chairman at the time this lawsuit started (collectively, "the Tribe"), filed a Complaint for declaratory, injunctive, and other relief. Doc. 1. Plaintiffs named as Defendants the United States Corps of Engineers, Robert J. Ruch, in his official capacity as district commander, and Steven E. Naylor, in his official capacity as regulatory program manager (collectively, "the Corps"). This Court granted in part Defendants' Motion to Dismiss for Lack of Jurisdiction, Docs. 32, 69, ordered the Defendants to file the Administrative Record (AR), and set a briefing schedule, Doc. 71.

On February 5, 2015, the Tribe filed a Motion to Compel Production of the Whole Administrative Record. Doc. 73. On March 10, the Tribe filed a separate Motion to Supplement

1

the Administrative Record. Doc. 77. On May 28, the Tribe filed a Motion to Reconsider Equitable Tolling Based Upon Intervening Authority. Doc. 81. The Defendants opposed all motions in separate briefs. Docs. 76, 79, 84. For the reasons explained below, the Motion to Compel Production is denied, the Motion to Supplement the Record is granted in part, and the Motion to Reconsider is denied.

I.    FACTS

The circumstances leading to this case are described in greater detail in this Court's previous opinions regarding the motion to dismiss, Docs. 32, 69, but a brief history of the case helps in understanding the issues framed by the pending motions. The case revolves around what the Tribe views as a potential commercial development project adversely affecting Enemy Swim Lake in northeastern South Dakota, which Defendants have allegedly improperly permitted to occur under the guise of agricultural projects.

Merlyn Drake (Drake), who is not a member of the Tribe, owns land adjoining Enemy Swim Lake. Doc. 32 at 2. Drake has engaged in certain road and bridge construction activities in wetland areas adjacent to the lake, along the shore of the lake, and across a stream feeding into the lake. Doc. 32 at 2–3. In response to inquiries from Drake prior to the construction activities, the Corps sent a series of communications to Drake deeming that his construction activities did not require individual discharge permits under the Clean Water Act[1] (CWA) because, as proposed, they were either exempt from CWA regulation altogether or authorized under a Nationwide General Permit (Nationwide Permit). Doc. 32 at 3–5.

The Tribe owns land around Enemy Swim Lake, which has cultural and religious significance to the Tribe. Doc. 32 at 2. The Tribe and others in the area became concerned

---

[1]The Clean Water Act prohibits discharge of any pollutants, including sand, rock, and dirt, into the "waters of the United States" without a permit. 33 U.S.C. §§ 1311, 1362(6), (7).

2

about Drake's activities on his lakeshore property, and in January 2005, the office of then United States Senator Tim Johnson organized a meeting to address those concerns at the Day County Courthouse in Webster, South Dakota. Doc. 32 at 4. At that meeting, tribal officials in attendance became aware of four prior Corps determinations (made on August 18, 1998, June 6, 2000, December 2, 2003, and December 4, 2003), Doc. 32 at 3–4, that Drake's activities did not require individual discharge permits. Doc. 69 at 16–17.

The Corps later made two more determinations that Drake need not acquire individual discharge permits for certain activities on his lakeshore property. Doc. 32 at 4–5. On May 1, 2006, the Corps informed Drake through a letter that a proposed bridge across the primary inlet tributary to Enemy Swim Lake was exempt from CWA permitting as a farm road, and on May 4, 2009, the Corps informed Drake through a letter that another proposed crossing of wetlands north of the inlet utilizing culverts was authorized under a Nationwide Permit. Doc. 32 at 4–5.

In 2009, the Tribe made a Freedom of Information Act (FOIA) request regarding the Corps' dealings with Drake and received responsive documents. Doc. 16 at 3; Doc. 18 at 2. In 2009 and 2010, the Tribe and the Corps exchanged several letters. On June 15, 2009, the Tribe asked the Corps to withdraw its determinations that some of Drake's activities were exempt and others were authorized by the Nationwide Permits. Doc. 32 at 5. On August 30, 2010, the Corps wrote a letter to the Tribe explaining the bases for the Corps' exemption and Nationwide Permit decisions and why it continued to believe its decisions were correct. Doc. 32 at 5.

The Tribe's complaint against the Corps sought judicial review of various Corps actions (and failures to take action) under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–06. This Court granted in part the Corps' motion to dismiss in an Opinion and Order dismissing "any and all Counts and claims challenging Corps' exemption and Nationwide Permit determinations

3

that were discussed during the January 25, 2005 meeting as having been granted, authorized, or determined" because they were barred by the statute of limitations. Doc. 32 at 22. Following two evidentiary hearings, this Court concluded that the determinations made on August 18, 1998, June 6, 2000, December 2, 2003, and December 4, 2003, were final and known to tribal officials as a part of the January 25, 2005 meeting, and thus the Tribe's challenges to those determinations were time barred. Doc. 69 at 17. The Tribe's claims challenging the "Corps' decisions not to modify, suspend, or revoke those determinations" were dismissed as non-justiciable. Doc. 32 at 22; Doc. 69 at 17. This Court also dismissed all claims the viability of which hinged upon the Tribe's assertion of the August 30, 2010 letter being the sole final agency action. Doc. 32 at 22.

On January 8, 2015, the Defendants filed a compact disc, which contains 756 individual, often multiple-page documents, that the Corps certified as the administrative record relevant to remaining claims. Docs. 72, 72–1. The Tribe then filed its Motion to Compel the Whole Administrative Record, Doc. 73, and its Motion to Supplement the Administrative Record. Doc. 77. On May 28, 2015, the Tribe filed its Motion to Reconsider, requesting that this Court reconsider its previous decision that the statute of limitations in this case, 28 U.S.C. § 2401(a), is not subject to equitable tolling because it is jurisdictional. Doc. 81 at 1–2.

## II.    ANALYSIS

### A.    Remaining Claims

Some of the dispute over the motion to compel and motion to supplement the record revolves around a disagreement between the parties about what claims remain after this Court's prior orders granting in part the motion to dismiss. The claims dismissed by this Court fell within three categories: (1) final determinations on which the statute of limitations has run; (2) claims that depend upon characterizing the August 30, 2010 letter from the Corps to the Tribe as

a final agency action; and (3) non-justiciable enforcement decisions "not to modify, suspend or revoke a Section 404 permit," Sisseton-Wahpeton Oyate of the Lake Traverse Reservation v. U.S. Corps of Eng'rs, 918 F. Supp. 2d 962, 970–74 (D.S.D. 2013) (quoting Mo. Coal. for the Env't v. Corps of Eng'rs, 866 F.2d 1025, 1032 n.10 (8th Cir. 1989)).

Both parties agree that the Corps' May 1, 2006 determination of Drake's activities being exempt from CWA discharges permit requirements and the Corps' May 4, 2009 determination of Drake's activities being authorized under a Nationwide Permit are final agency actions taken within the statute of limitations period. See Doc. 76 at 3. The challenges to those two determinations remain active. The Defendants argue that those two claims are the only claims that remain. Doc. 76 at 3. Thus, Defendants argue they have provided the whole administrative record relevant to those claims and have no obligation to provide any additional materials. Doc. 76 at 1. In contrast, the Tribe takes the position that its claims "pertaining to Recapture (Count 4), Best Management Practices (Count 5), and Stacking (Count 7)," as well as its National Historic Preservation Act (NHPA) claim (Count 8) and others, survive as claims challenging agency inaction and are not fixed at a single point in time. Doc. 73 at 4; Doc. 78 at 1–2. Thus, the Tribe argues, the Corps has an obligation to turn over records pertaining to all of Drake's activities near Enemy Swim Lake, including information received after the final Nationwide Permit verification, because that information is relevant to alleged decisions not to act. Doc. 78 at 3.

Prior to the January 18, 2013 order on the motion for partial dismissal, the Tribe had argued that the Corps had not taken final action on the Drake projects until the Corps issued the letter to the Tribe on August 30, 2010, and thus the letters to Drake notifying him that his projects did not require individual permits were merely preliminary decisions. Doc. 16 at 23–32;

5

Doc. 29 at 18–20. The Tribe's original recapture claim, Count 4, explicitly challenged what the Tribe characterized as "the [Corps'] final decision in 2010 that Drake's activities have not been recaptured under the [CWA]." Doc. 16 at 27; Doc. 29 at 19–20. Similarly, the best management practices claim and the allegations regarding Drake's fill of a small spring feeding Enemy Swan Lake challenged what the Tribe claimed to be a final decision in the August 30, 2010 letter. Doc. 16 at 27–28; Doc. 29 at 20. This Court rejected the argument that the August 2010 letter was the final decision and determined that the individual verifications from the Corps notifying Drake that his proposed projects did not require individual discharge permits were final agency actions for purposes of a challenge under the APA. Sisseton-Wahpeton Oyate of the Lake Traverse Reservation, 918 F. Supp. 2d at 972; see also 5 U.S.C. § 704 (making final agency action subject to judicial review).

For the present motion, however, the Tribe has re-characterized most of its claims as failure-to-act claims not restricted to a single point in time. Doc. 73 at 4–5; Doc. 78 at 3. In essence, the Tribe now is arguing that the Corps was required to make a new regulatory determination with regard to all of Drake's previous projects when it received information that could lead to the conclusion that Drake was engaged in non-farming activities. Doc. 78 at 1–2 ("The Tribe's claims pertaining to Recapture (Count 4), Best Management Practices (Count 5), and Stacking (Count 7)–if successful–*require a permit determination* regarding Mr. Drake's activities and each of those claims . . . occurred within six years of the initial filing of the Complaint in this action." (emphasis added)). The Tribe has not sought leave to file a second amended complaint, and this Court will not allow the Tribe to amend its claims through a motion to compel or a motion to supplement the record.

6

Moreover, claims that an agency has failed to take an action must allege that the agency was required to take the discrete action sought. Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004). Thus, even if the Tribe properly pleaded such claims, it would have to show both (1) that the Corps has a non-discretionary duty to investigate allegations of non-exempt discharges or discharges that do not comply with applicable permits, and (2) that, if the allegations are substantiated, the Corps must order the discharger to cease and remedy any damage or to acquire or comply with a permit. The Corps certainly has authority to investigate and impose sanctions for violations of the CWA. 33 U.S.C. § 1319. However, that CWA enforcement authority is considered to be discretionary. See Dubois v. Thomas, 820 F.2d 943, 950–51 (8th Cir. 1987) (finding non-justiciable a claim seeking to compel enforcement action against an alleged violator of the CWA). Citizens may not "commandeer the federal enforcement machinery"; they may only supplement it through direct actions of their own against violators. Id. at 949. The Tribe thus cannot compel the Corps to investigate allegations of CWA violations through judicial proceedings.[2]

The Tribe's remaining claims challenge the two final decisions made by the Corps within the statute of limitations verifying that Drake need not apply for individual discharge permits, the decisions by the Corps that the proposed projects that were the subject of the 2006 and 2009

---

[2]The Tribe argues that the Corps has no discretion to allow discharges of regulated pollutants without a permit. Doc. 78 at 4 (citing United States v. Brace, 41 F.3d 117, 124 (3d Cir. 1994)). The Tribe's reliance on Brace is misplaced. Brace deals with a defendant in an action *brought by the United States* for a violation of the CWA and his burden to show that his actions were exempt from regulations. Brace 41 F.3d at 119, 124. That case does not stand for the proposition that the Corps has a duty to take action whenever there is any violation, however technical, of the CWA.

7

verifications were not federal undertakings subject to the NHPA, and the Corps' alleged coaching of Drake on how to avoid CWA issues.[3]

### B.    Motion to Compel

The Tribe seeks review of the Corps' decision-making under the APA, which generally is limited to review of the record before the agency at the time of the agency action. 5 U.S.C. § 706; Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971) overruled on other grounds by Califano v. Sanders, 430 U.S. 99, 105 (1977); Voyageurs Nat'l Park Assoc. v. Norton, 381 F.3d 759, 766 (8th Cir. 2004). In a challenge to an informal administrative decision making such as this proceeding, the record does not necessarily contain transcripts of formal administrative proceedings or evidentiary hearings. See generally 33 Charles Alan Wright & Charles H. Koch, Jr., Federal Practice and Procedure: Judicial Review of Administrative Action § 8306, at 74–75, § 8330, at 150–52 (2006). Instead, the record is the information actually considered by the administrator. Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985). This limitation serves to limit judicial review to the propriety of the agency's decision and discourage substitution of a court's judgment for the agency's as in a de novo review. Voyageurs Nat'l Park Assoc., 381 F.3d at 766 (citing United States v. Morgan, 313 U.S. 409, 422 (1941)). "When there is 'a contemporaneous administrative record and no need for additional explanation of the agency decision, "there must be a strong showing of bad faith or improper behavior" before the reviewing court may permit discovery and evidentiary supplementation of the administrative record.'" Id. at 766 (quoting Newton Cty. Wildlife Ass'n v. Rogers, 141 F.3d 803, 807–08 (8th Cir. 1998)).

---

[3]The Corps did not seek dismissal of the NHPA claim or the coaching claim to the extent that the decisions and conduct fell within the statute of limitations. See Doc. 26.

This motion, however, presents a somewhat different issue than cases where a party seeks to supplement the record. Here, the Tribe alleges that the Corps is withholding parts of the administrative record used to make the determinations at issue. The Corps asserts that the administrative record is complete for the remaining claims and argues that it is entitled to a presumption that it has acted properly absent "'clear evidence to the contrary.'" Doc. 76 at 6 (quoting Bar MK Ranches v. Yuetter, 994 F.2d 735, 740 (10th Cir. 1993)). Courts generally "accord Government records and official conduct a presumption of legitimacy." U.S. Dep't of State v. Ray, 502 U.S. 164, 179 (1991); United States v. Chem. Found., Inc., 272 U.S. 1, 14–15 (1926) (citations omitted). The presumption of regularity is not so much a rule of evidence as it is "a general working principle." Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 174 (2004).

Generally, the Supreme Court has required a party seeking to overcome the presumption that a Government official has acted properly to present "clear evidence to the contrary." E.g., United States v. Armstrong, 517 U.S. 456, 464 (1996) (quoting Chem. Found., 272 U.S. at 14–15). However, a lower standard may apply in unique circumstances. Favish, 541 U.S. at 174–75 (holding that a FOIA document requester who has been denied access to documents on the basis of a third-party privacy interest must produce evidence "that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred" to assert a public interest in exposing improper or negligent conduct by a Government officer to weigh against the privacy interest). The standard required to overcome the presumption of regularity in Armstrong—clear evidence to the contrary—is appropriate in this case because the countervailing policy interests militating for the less stringent standard applied in Favish are not present here. In Favish, the Supreme Court noted that the FOIA policy generally making

9

Government documents available for review by the public helped justify a less stringent standard for overcoming the ordinary presumption of regularity. Id. at 174. By contrast, judicial review of an administrative action is intended to be a narrow review to ensure that the administrative decision is justified by the record, see Camp v. Pitts, 411 U.S. 138 (1973) (per curiam), and too much interference in the administrative decision-making process risks negating expertise and efficiency advantages that should inhere in the administrative process. Wright & Koch, supra § 8330, at 144–46.    Therefore, the Tribe has to show clear evidence to contradict the presumption that the Corps has provided the complete administrative record. See also Bar MK Ranches, 994 F.2d at 739–40 (denying plaintiffs' motion to supplement the record because they had not offered clear evidence that the administrative record supplied by the agency was incomplete).

The Corps filed the administrative record with a certification from Defendant Steven N. Naylor, the Corps' State Program Manager for South Dakota, declaring that the documents filed constituted the administrative record for the May 1, 2006 exemption determination and the May 4, 2009 Nationwide Permit determination. Doc. 72-1. The Tribe asserts that the administrative record should include other documents concerning Drake's activities. Most of the documents the Tribe considers to be missing were generated by or disclosed to the Corps after the May 4, 2009 determination, but some predate the May 4, 2009 determination or are undated. Docs. 73-1, 78-1. The Tribe has provided a list of documents it believes to be missing from the record, of which it became aware through FOIA requests. Docs. 73-1, 78-1. The Tribe has not offered any other evidence that the record filed by the Corps is not in fact the record considered by the Corps when making the challenged determinations or that the record was incorrectly compiled.

10

The Tribe's list of allegedly missing documents falls short of clear evidence rebutting the presumption of regularity. First, many of the documents that the Tribe claims should be part of the administrative record are documents generated after the latest of the determinations being challenged in this case. See Doc. 78-1. As this Court explained above, the only remaining counts challenge the May 1, 2006 and the May 4, 2009 determinations, alleged coaching of Drake by the Corps, and alleged NHPA violations. This Court rejected the Tribe's argument that the Corps' lack of regulation or enforcement action constitutes a continuing wrong. Doc. 32 at 13–14. Judicial review of an administrative decision is limited to review of information that was before the administrative body at the time of the decision. Voyageurs Nat'l Park Assoc., 381 F.3d at 766. Thus, the documents generated after the latest determination, May 4, 2009, do not show that the Corps has filed an incomplete administrative record.

Some documents that the Tribe claims should be part of the administrative record were generated prior to the challenged determinations. However, several of those documents are in fact included in the record or would not have been relevant to the determinations being challenged. For example, at "FOIA Tab" numbers 62 and 64 in the Tribe's list of alleged discrepancies between documents it knows of and the administrative record, the Tribe identifies documents from the fall of 2005 that it claims are not in the record. Doc. 78-1 at 5. Of the documents listed in FOIA Tab number 64, the Tribe argues that only one—the handwritten notes from a phone conversation with Drake—were included in the administrative record. Doc 78-1 at 5. But this Court was able to locate the following documents from FOIA Tab number 64 in the administrative record: (1) the jurisdictional determination document and the map entitled "M Drake Ag Access Road Roberts Co." are in the administrative record at RA 1560; (2) the application for Department of the Army Permit, the map entitled "Drake-Day Co.," the hand-

drawn bridge description, and the photo are at RA 1455–60; and (3) the map is at RA 1551–52. There are instances where documents that the Tribe maintains are missing from the record are of attenuated relevance. For instance, the FOIA tab number 62 document is a letter from Corps' representative Gary M. Henningsen dated September 15, 2005, to Douglas Block regarding Block's own FOIA request. Doc 21–62. That letter does not appear to be relevant to whether Drake's activities required individual discharge permits under the CWA. This Court has not examined every alleged discrepancy outlined by the Tribe. However, these examples illustrate that the pre-decision documents the Tribe alleges to be missing from the record do not necessarily establish clear evidence that the administrative record was improperly compiled. To the contrary, these examples suggest that the administrative record is more complete than what the Tribe portrays.

### C.    Motion to Supplement the Administrative Record

The Tribe seeks to supplement the record to reflect that "the Corps knew that Mr. Drake is a developer since at least September 22, 2008." Doc. 77 at 3 (emphasis omitted). If the Corps in 2008 knew Drake in 2008 to be a developer disguising his work around Enemy Swim Lake as being for agricultural purposes only, the Corps' May 4, 2009 determination is cast in doubt. The Tribe offers to add affidavits of three tribal employees stating that they were recently informed by Drake that he intends to develop eighteen lots on the property made accessible by the challenged construction. Doc. 77-1. The Tribe also wants the administrative record to include testimony from this Court's 2013 evidentiary hearings held to determine factual issues related to the motion for partial dismissal of this case. Doc. 77. These proposed additions to the record would, the Tribe believes, show that the Corps knew by no later than September 22, 2008, that

12

Drake was a developer and not engaged in agricultural activity. Doc. 77 at 3–5. The Corps opposes this motion.

As outlined above, challenges to final agency action generally are limited to review of the record that was before the agency at the time the action was taken. 5 U.S.C. § 706; Overton Park, 401 U.S. at 420; Voyageurs Nat'l Park Assoc., 381 F.3d at 766. The whole record is the information actually considered by the Corps before taking an action. Fla. Power & Light Co., 470 U.S. at 744. This limitation serves to limit judicial review to the propriety of the agency's decision rather than substitute a court's judgment for the agency's as in a de novo review. Voyageurs Nat'l Park Assoc., 381 F.3d at 766. There is a "very narrow exception" to this limited review that allows supplementation of the record only in the "'extraordinary circumstance[ ]' in which a strong showing can be made that the record is so incomplete as to preclude effective judicial review or that there is clear bad faith or improper behavior." South Dakota v. U.S. Dep't of the Interior, 423 F.3d 790, 803 (8th Cir. 2005) (quoting Voyageurs Nat'l Park Assoc., 381 F.3d at 766).

The Corps' decisions and administrative record in this case are sufficient to allow judicial review, so the Tribe must show that there has been clear bad faith or improper behavior to justify supplementing the record. The Tribe argues that the evidence with which it seeks to supplement the record shows bad faith because it demonstrates that the Corps "ignored an important statutory and regulatory issue—whether Mr. Drake is a developer." Doc. 77 at 5. Further, the Tribe argues that bad faith is shown because the Corps has, the Tribe claims, failed to disclose to the Tribe information it had about Drake's alleged development activities in contravention of the Corps' own tribal consultation policy. Doc. 77 at 5–9. This proposed evidence fails to constitute

a strong showing of bad faith or improper behavior on the part of the Corps to justify supplementation of the administrative record for review of the final agency decisions.

The three affidavits offered by the Tribe do not show that the Corps acted improperly or in bad faith when it considered whether Drake's proposed projects required individual permits. The affidavits state that Drake told Tribal employees in the fall of 2014—over five years after the latest challenged decision—that he planned to develop eighteen "lakeshore units or lots" on his land north of the inlet to Enemy Swim Lake. Doc. 77-1. This information is disconcerting in light of Drake obtaining earlier exemptions ostensibly for agricultural purposes and availing himself of a Nationwide Permit for a possible single home. The affidavits, however, do not show that Drake had the intent to develop eighteen lots at the time the Corps was considering his requests in 2006 and 2009, nor that Drake has ever communicated such a plan to the Corps. The lack of information about the alleged eighteen contemplated lots in the administrative record does not make a strong showing of the Corps' bad faith.

Likewise, the testimony from this Court's 2013 evidentiary hearings does not establish improper or bad-faith conduct by the Corps in its compilation of the administrative record. The Tribe argues that this testimony establishes that the Corps knew Drake was a "developer" by September 22, 2008, at the latest. Doc. 77 at 3 (emphasis omitted). This argument exaggerates the testimony of representatives of the Corps, who testified that they were aware by that time Drake was considering building a house or a cabin north of the inlet. E.g., Doc. 45 at 192 (Defendant Naylor acknowledging reading notes from phone calls in which the Corps received information from a concerned neighbor that Drake may be preparing a site for a "home or homes"); Doc. 45 at 194 (Defendant Naylor agreeing during cross-examination that Drake had informed him that Drake was preparing a site for a cabin). There was no testimony that the

14

Corps knew of any other development project by Drake, let alone an eighteen-lot development project in 2008 or at any time. The Corps officials' testimony at the evidentiary hearing is consistent with the submitted administrative record, which contains documents noting Drake's preparation for a possible cabin or home on the north side of the inlet to Enemy Swim Lake. E.g., RA 2958 (writing in phone notes from September 22, 2008, that Drake was considering a future residence north of the inlet); RA 3035 (noting possible residence in notes of phone conversation from November 3, 2008); RA 3525 (noting possible residence in letter to Sen. John Thune); RA 3589 (noting possible residence in internal conversation record); RA 3672 (noting possible residence in internal email communication).

The Tribe also seeks to supplement the record with evidence that the Corps failed to follow established tribal consultation policies. Tribal consultation is an important governmental policy aimed at respecting tribal sovereignty and self-determination of tribal members in government decision-making in a country whose development and governmental decision-making was often at the expense of tribal sovereignty and self-determination of tribal members. See President Barack Obama, Tribal Consultation: Memorandum for the Heads of Executive Departments and Agencies, 74 Fed. Reg. 57881 (Nov. 5, 2009). The Tribe only cites one area of the proposed supplements to the record that concerns a consultation responsibility with the Tribe, Doc. 77 at 9 & n.18, where Corps employee Jim Oehlerking testifies about notes he made regarding a conference call. The Corps' Native American Coordinator informed Oehlerking and the others on the call that the Corps had "not been notified of [an] issue with [the] exempt crossing by the Tribe and [we] have fulfilled our responsibility. If we [are] made aware of concerns, then we should consult and coordinate." Doc. 57 at 46–48. The notes to which Oehlerking referred during his testimony are in the administrative record. RA 3597–98. At this

15

point, that document and testimony already is part of this Court's record. To the extent that lack of tribal consultation, "coaching," or NHPA violations are at issue, this Court will allow the Tribe latitude to cite to and rely upon material it has placed in the CM/ECF record including from the evidentiary hearing. But supplementation of the record for purposes of the APA review of the Corps' decisions at issue dated May 1, 2006, and May 4, 2009, is not justified.

## C. Motion to Reconsider Equitable Tolling

In this Court's first Opinion and Order regarding the partial motion to dismiss, this Court ruled that running of the statute of limitations applicable in this case, 28 U.S.C. § 2401(a), could not be tolled for equitable reasons because that statute was jurisdictional in nature. Sisseton-Wahpeton Oyate of the Lake Traverse Reservation, 918 F. Supp. 2d at 967–68, 972. During the pendency of this case, the Supreme Court of the United States in United States v. Kwai Fun Wong, 135 S. Ct. 1625 (2015), held that the statute of limitations provision in a nearby statute, § 2401(b), was not intended by Congress to be jurisdictional, and therefore equitable tolling could suspend the running of that statute in appropriate factual circumstances. Id. at 1629. The Tribe argues that under Federal Rule of Civil Procedure 54(b) this Court should reconsider its decision regarding equitable tolling because of the intervening authority of Kwai Fun Wong. Docs. 81, 85. The Corps opposes this motion. Doc. 84. Because this Court's judgment that § 2401(a) is not subject to equitable tolling is not a manifest error of law, the motion to reconsider is denied. Furthermore, even if the statute of limitations in § 2401(a) were subject to equitable tolling, the Tribe has not met its burden of showing that despite the Tribe's diligent pursuit of its rights, some extraordinary circumstance prevented it from filing its dismissed claims on time.

### 1. Motion to Reconsider Standard

A court has the authority to revise any order or decision that "adjudicates fewer than all the claims" in an action presenting more than one claim for relief at "any time before the entry of a judgment adjudicating all the claims . . . ." Fed. R. Civ. P. 54(b). A motion to reconsider, when directed at an order that does not adjudicate all claims in a particular action, is treated as a Rule 60 motion for relief from a judgment or order. Broadway v. Norris, 193 F.3d 987, 989 (8th Cir. 1999). Though ultimately within a court's discretion, courts generally should limit granting such motions to only when necessary to correct "'manifest errors of law or fact'" or to allow presentation of "'newly discovered evidence.'" Bradley Timberland Res. v. Bradley Lumber Co., 712 F.3d 401, 406–07 (8th Cir. 2013) (quoting United States v. Metro. St. Louis Sewer Dist., 440 F.3d 930, 933 (8th Cir. 2006)). Rule 60 authorizes relief "based on certain enumerated circumstances" and does not provide a means to simply "reargu[e] on the merits" a previously decided issue. Broadway, 193 F.3d at 989–90.

In the Tribe's opposition to the motion to dismiss, relying primarily on the United States Supreme Court decision in Irwin v. Department of Veterans Affairs, 498 U.S. 89 (1990), the Tribe argued that this Court should apply a presumption that 28 U.S.C. § 2401(a) is subject to equitable tolling.[4] Doc. 65 at 7–8. The Tribe now argues that this Court's determination that § 2401(a) is jurisdiction is "no longer reconcilable with the intervening authority" of Kwai Fun Wong. Doc. 81 at 2.

The Supreme Court's analysis in Kwai Fun Wong employed a straightforward application of the rule announced in Irwin. See Kwai Fun Wong, 135 S. Ct. at 1630–33. The

---

[4]In Irwin, the Supreme Court held that federal courts should apply the same rebuttable presumption—that a statute of limitations is subject to the doctrine of equitable tolling—to statutes of limitations that apply to actions against the United States government as it does to statutes of limitations that apply to actions between private parties. Irwin, 498 U.S. at 95–96.

Court applied the rebuttable presumption that Congress intended the statute of limitations for tort claims against the United States, 28 U.S.C. § 2401(b), to be subject to equitable tolling. Kwai Fun Wong, 135 S. Ct. at 1630–31. However, the Court noted that a "rebuttable presumption, of course, may be rebutted," and one way to do so "is to show that Congress made the time bar at issue jurisdictional." Id. at 1631. The Court then reasoned that the text, statutory context, and legislative history of § 2401(b) did not express clear intent by Congress to make the provision jurisdictional. Id. at 1631–33. After finding nothing to rebut the presumption of the applicability of equitable tolling to § 2401(b), the Court stated: "And so we wind up back where we started, with Irwin's 'general rule' that equitable tolling is available in suits against the Government." Kwai Fun Wong, 135 S. Ct. at 1633 (quoting Irwin, 498 U.S. at 95). Because the decision in Kwai Fun Wong did not alter the equitable tolling analysis articulated in Irwin, the Tribe's motion to reconsider merely seeks to reargue the issue on the merits, unless the Kwai Fun Wong holding is directly applicable to § 2401(a).

The Kwai Fun Wong decision is not directly applicable to § 2401(a). The Supreme Court in Kwai Fun Wong analyzed § 2401(b), which was passed as part of the Federal Tort Claims Act and applies only to tort claims against the United States. Kwai Fun Wong, 135 S. Ct. at 1629. The provision in § 2401(a) was passed originally as part of the Tucker Act and applies to non-tort claims against the United States. Act of March 3, 1887, Ch. 359 §§ 1–2, 24 Stat. 505; see also Reviser's Note, 28 U.S.C. § 2401 (1946 2d Supp.) (noting subsection (a) is the time limit for bringing claims pursuant to 28 U.S.C. § 1346(a) and is a recodification of 28 U.S.C. § 41(20) (1940) while subsection (b) recodifies 28 U.S.C. § 942 (1940)). In short, the Congressional intent with respect to the jurisdictional effects of § 2401(a) and § 2401(b) are not necessarily the

same, and the Kwai Fun Wong decision finding § 2401(b) subject to equitable tolling does not foreclose the opposite conclusion with respect to § 2401(a).

The United States Court of Appeals for the Eighth Circuit has not directly addressed whether § 2401(a) is subject to equitable doctrines tolling the statute of limitations. However, two Eighth Circuit cases support this Court's conclusion that § 2401(a) is jurisdictional and therefore not subject to equitable tolling. First, in Loudner v. United States, 108 F.3d 896 (8th Cir. 1997), the Eighth Circuit reversed a district court decision dismissing a claim by a group of people claiming the government owed them benefits as descendants of the Sisseton-Wahpeton Sioux Tribe. Id. at 898. The district court had dismissed the case for lack of subject matter jurisdiction after determining that the claim accrued outside § 2401(a)'s six-year statute of limitations. Id. While explaining the procedural background of the case, the court noted parenthetically: "Filing within the applicable statute of limitations is treated as a condition precedent to the government's waiver of sovereign immunity, and cases in which the government has not waived its immunity are outside the subject-matter jurisdiction of the district courts." Id. at 900. The Eighth Circuit in Loudner also noted in the context of § 2401(a):

The doctrine of sovereign immunity precludes suit against the United States without the consent of Congress; the terms of its consent define the extent of the court's jurisdiction. The applicable statute of limitations is a term of consent. The plaintiff's failure to sue within the period of limitations is not simply a waivable defense; it deprives the court of jurisdiction to entertain the action.

Id. at 900 n.1 (quoting Sisseton-Wahpeton Sioux Tribe v. United States, 895 F.2d 588, 592 (9th Cir. 1990)). Ultimately, the court in Loudner found that the cause of action accrued at a later date than the date the district court had determined, which made timely the plaintiff's filing of the claim. Id. at 902. Second, in Konecny v. United States, 388 F.2d 59 (8th Cir. 1967), the Eighth Circuit affirmed dismissal for lack of subject matter jurisdiction of a claim against the

19

government brought under the Tucker Act because it was filed after the § 2401(a) statute of limitations had run. Id. 63–64. While the Eighth Circuit did not address the intent of Congress in Konecny, its holding recognized the jurisdictional consequences of § 2401(a). Id. at 66 ("The District Court's finding that Konecny's cause of action accrued prior to 1958 is not clearly erroneous. In fact this finding appears to be inescapable on the Record, and the District Court, therefore, lacked jurisdiction to consider the claim."). Both Loudner and Konecny support this Court's conclusion that § 2401(a) is jurisdictional and therefore not subject to equitable tolling.

There is recent Eighth Circuit authority, however, that makes it difficult to be certain that the Eighth Circuit precedent in Loudner and Konecny settles the issue in this circuit. The Eighth Circuit in Andersen v. United States Department of Housing & Urban Development, 678 F.3d 626 (8th Cir. 2012), affirmed the dismissal of a claim against the government brought twenty years after the cause of action accrued. Id. at 627. However, after determining that the action was filed after the § 2401(a) statute of limitations had run, the Eighth Circuit rejected the plaintiff's equitable tolling argument because his claim was "at best a 'garden variety claim of excusable neglect' that is not eligible for tolling." Id. at 629 (quoting Irwin, 498 U.S. at 96). Although the Court quoted Irwin for the substantive standard of equitable tolling, it did not address whether § 2401(a) was jurisdictional. See id.

Other United States Courts of Appeals are split on the question of whether § 2401(a) is subject to equitable tolling. Compare Ctr. for Biological Diversity v. Hamilton, 453 F.3d 1331, 1334 (11th Cir. 2006) (per curiam) ("Unlike an ordinary statute of limitations, § 2401(a) is a jurisdictional condition attached to the government's waiver of sovereign immunity, and as such must be strictly construed." (quoting Spannaus v. Dep't of Justice, 824 F.2d 52, 55 (D.C. Cir. 1977)), with Clymore v. United States, 217 F.3d 370, 373–74 (5th Cir. 2000) (finding § 2401(a)

subject to equitable tolling because it is a "garden variety" statute of limitations and allowing equitable tolling would not create an "administrative nightmare"), Polanco v. U.S. Drug Enf't Admin., 158 F.3d 647, 655 (2d Cir. 1998) (finding § 2401(a) subject to equitable tolling), and Cedars-Sinai Med. Ctr. v. Shalala, 125 F.3d 765, 770 (9th Cir. 1997) (relying on Irwin to hold that § 2401(a) may be subject to equitable tolling). No circuit court has undertaken an in-depth look at the legislative history of § 2401(a).

That leaves this Court back where it started. This Court noted that that "neither equitable estoppel [nor] equitable tolling apply to statutes of limitations that are jurisdictional in nature." Doc. 32 at 17–18. Having earlier stated that "the statute of limitations [in § 2401(a)] is a jurisdictional limit," Doc. 32 at 8, this Court did not address the substance of the Tribe's equitable tolling argument. Doc. 32 at 17–18. Because of the support for that finding in Eighth Circuit precedent and the split in other circuits, that conclusion was not a "manifest error of law" that justifies reconsideration. See Bradley Timberland Res., 712 F.3d at 406–07.

### 2. Equitable Tolling is not Justified Under these Circumstances

Even if this Court were to assume that equitable doctrines could toll the running of § 2401(a), the Tribe does not make a convincing argument that the statute of limitations should be tolled in this case. "Federal courts have typically extended equitable relief only sparingly . . . ." Irwin, 498 U.S. at 96. While the Supreme Court has allowed equitable tolling in situations where a plaintiff has "actively pursued his judicial remedies" but filed a defective pleading within the statutory period or where a plaintiff has been "tricked by [an] adversary's misconduct into allowing the filing deadline to pass," plaintiffs are not entitled to equitable tolling when they have "failed to exercise due diligence in preserving" their legal rights. Id. A plaintiff seeking equitable tolling must show that he or she "has been pursuing his [or her] rights

diligently, and . . . that some extraordinary circumstance stood" in the way. Holland v. Florida, 560 U.S. 631, 649 (2010); see also Jenkins v. Mabus, 646 F.3d 1023, 1028 (8th Cir. 2011). The Eighth Circuit has further clarified the distinction between equitable tolling and equitable estoppel, another equitable doctrine that may toll the running of a statute of limitations. See Dring v. McDonnell Douglas Corp., 58 F.3d 1323, 1328 (8th Cir. 1995) (noting that equitable tolling has occasionally been used as a blanket term that includes equitable estoppel but that equitable tolling does not involve misconduct by the other party). When a plaintiff shows that the defendant "actively prevent[ed]" the plaintiff from meeting the filing deadline, the doctrine of equitable estoppel may apply. Jenkins, 646 F.3d at 1027–28. However, when "'despite all due diligence, [a plaintiff] is unable to obtain vital information bearing on the existence of [the] claim'" the doctrine of equitable tolling may pause the running of the statute of limitations. Dring, 58 F.3d at 1328 (quoting Chakonas v. City of Chi., 42 F.3d 1132, 1135 (7th Cir. 1994)). The Seventh Circuit in Cada v. Baxter Healthcare Corp., 920 F.2d 446 (7th Cir. 1990), distinguished between these equitable doctrines and the doctrine of discovery noting that the equitable doctrines presume that "the plaintiff has discovered, or, as required by the discovery rule, should have discovered, that the defendant injured him," and thus if the injury has not been discovered, the doctrine of discovery—not equitable tolling or equitable estoppel—prevents the statute of limitations from running. Id. at 451. Further, the difference between equitable tolling and the doctrine of discovery is that, for equitable tolling, the plaintiff is aware of the injury (or should be), but despite due diligence, a reasonable person in the plaintiff's position would not have known the injury was possibly caused by a violation of the party's rights. Id.

A clear understanding of the distinctions between these statute of limitations doctrines allows this Court to address the Tribe's many equitable tolling arguments. See Doc. 81 at 10–15

(restating sixteen arguments from previous filings). Many of the arguments allege activities that happened prior to the date this Court has determined the cause of action accrued. See, e.g., Doc. 81 at 11–12 (arguing in arguments 3 and 7 that the Corps did not give public notice of its determinations); Doc. 81 at 13 (arguing in argument 11 that the Tribe was not invited to a 2004 site visit in which South Dakota officials were invited to participate). Those arguments cannot support tolling of the statute of limitations because the statute of limitations had not started running for the 1998, 2000, and 2003 Corps' determinations. Doc. 69 (finding the Tribe's cause of action for claims relating to 1998, 2000, and 2003 determinations accrued on January 25, 2005).

Other arguments reargue this Court's decision about when the cause of action accrued for purposes of the statute of limitations. See, e.g., Doc. 81 at 9–10 (arguing in argument 2 that the Tribe did not and could not have known at the January 25, 2005 meeting that Drake would engage in large scale excavation in 2008 and 2009); Doc. 81 at 11–12 (arguing in arguments 3 and 7 that the Corps never gave public notice of its determinations); Doc. 81 at 11 (arguing in argument 4 that the Corps did not "proactively" contact the Tribe until 2009); Doc. 81 at 13 (arguing in argument 10 that the Corps did not provide the Tribe with records regarding Drake's activity until 2009); Doc. 81 at 14 (arguing in argument 14 that the Tribe could not have known that Drake would eventually make a development road). None of these alleged facts could have kept the Tribe from "vital information bearing on the existence" of its claim; new information about Drake's intentions after the determinations were made do not affect whether the determinations were correct at the time they were made, and therefore could not bear on the existence of a claim. The facts later learned by the Tribe might suggest that Drake may be violating the CWA, but they cannot affect the legality of the determinations made by the Corps

in 1998, 2000, and 2003 because the facts were not before the Corps at the time of those decisions. Moreover, as the facts set forth in this Court's previous opinions illustrate, the Tribe was already concerned about Drake's activities prior to the January 25, 2005 meeting, and the discussion at the meeting not only made the Tribe aware of the injury (the challenged adverse decisions), but the possibility that the Corps' decisions were wrong. Doc. 69 at 11–14. None of the alleged events that happened after the January 25, 2005 meeting and before the filing of this action prevented the Tribe, had it been diligently pursuing its rights, from filing a claim on time. "If a plaintiff were entitled to have all the time he needed to be *certain* his rights had been violated, the statute of limitations would never run—for even after judgment, there is no certainty." Cada, 920 F.2d at 451.

Finally, the Tribe argues that the Corps "asked the Tribe to exhaust administrative remedies." Doc. 81 at 11. This is technically more akin to an equitable estoppel argument. See Dring, 58 F.3d at 1328. However, the Tribe cites no evidentiary support for this allegation, and there is none in the record. Even if the Corps' alleged request could be interpreted as misconduct, bare allegations of misconduct do not entitle a plaintiff to equitable tolling. See Jenkins, 646 F.3d at 1028 (noting the burden of showing entitlement to equitable relief from a statute of limitations is on the plaintiff). In short, the Tribe has not shown the extraordinary circumstances necessary to entitle it to equitable relief from the statute of limitations barring the claims based on the 1998, 2000, and 2003 determinations. Therefore, even if § 2401(a) could be subject to equitable tolling, the Tribe has not met its burden of showing that it pursued its claims diligently.

## IV. CONCLUSION

Therefore, it is hereby

ORDERED that the Tribe's Motion to Compel Production, Doc. 73, is denied to the extent explained in this Opinion and Order. It is further

ORDERED that the Tribe's Motion to Supplement the Administrative Record, Doc. 77, is granted only to the limited extent permitted in this Opinion and Order. It is further

ORDERED that the Tribe's Motion to Reconsider, Doc. 81, is denied.

DATED this **18ᵗʰ** day of August, 2015.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE